COMMONWEALTH *vs.* HAROLD E. WILSON.

Hampshire. February 3, 1969. — March 7, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Larceny. Practice, Criminal,* Speedy trial, Place of trial. *Evidence,* Relevancy and materiality. *Witness,* Statement of witness, Advice to witness. *Supreme Judicial Court,* Argument, Brief. *Rules of Court.*

An exception to the denial of a motion for a directed verdict at the trial of a criminal case was not argued by the defendant in his brief or orally sufficiently to require this court to consider it. [443]

Evidence at the trial of an indictment against a dentist warranted conclusions that, in a number of instances, pursuant to a scheme, he secured the medical insurance numbers of certain patients for whom he had done dental work not covered by the insurance, that he then signed and submitted claims to the insurer indicating that he had done work covered by insurance which in fact he had not done, that as a

consequence he received insurance payments improperly, that to conceal his actions he placed on the claims false addresses of his patients, and that there was a pattern of theft and he was guilty of larceny. [443]

On the day trial commenced on an indictment on which the defendant had been arraigned about one year and seven months earlier, there was no error in denial of his motion, filed two days before trial commenced, to dismiss the indictment on the ground of failure to give him a speedy trial where it appeared that there had been no formal motion for a speedy trial, that the defendant himself had been responsible for a continuance to a court sitting eleven months after arraignment, that thereafter delays had been caused by events essentially unavoidable, and that there had been no objection to delay until about four months before trial. [444–445]

There was no error in the denial of a motion for a change of place of trial by jury of an indictment for larceny, although the motion was founded on extensive publicity given by a newspaper of the city where the case was pending to a trial and conviction of the defendant on charges of larceny not related to that case. [445]

Where a witness at the trial of an indictment testified on direct examination that on an investigation of certain streets in a city he had been unable to find numbers on those streets given by the defendant, and on cross-examination by the defendant the witness answered in the affirmative a question whether he had checked the city directory, there was no error in admitting the directory in evidence on redirect examination to confirm the lack of such numbers in it. [446]

At the trial of an indictment for larceny "pursuant to a single scheme" from a medical insurer "by means of false claims for medical services rendered under policies of" the insurer, claims made by the defendant upon which no payments to him had been made by the insurer were properly admitted in evidence as tending to show the scheme. [446]

No prejudice to the defendant in a criminal case was shown in that, on the morning for which the witnesses had been summoned, a police officer went over with them statements previously given by them and furnished them a copy of an article giving advice on conduct in court. [446]

INDICTMENT found and returned in the Superior Court on June 9, 1966.

A motion for a change of place of trial was heard by *O'Malley,* J. A motion to dismiss was heard by *Noonan,* J., and the case was tried before him.

*Thomas J. O'Connor* for the defendant.

*Stanley L. Cummings,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. The defendant, a dentist, was indicted for stealing more than $100, "pursuant to a single scheme,"

from Massachusetts Medical Service (Blue Shield) "by means of false claims for medical services rendered under policies of Blue Shield medical insurance." There was a verdict of guilty. The defendant appeals under G. L. c. 278, §§ 33A–33G. The relevant facts are stated in connection with the discussion of the several assignments of error.

1. A motion for a directed verdict, filed at the close of the Commonwealth's case, was properly denied. The defendant's counsel, both in his brief and at the arguments, has not presented his contentions concerning the exception to the denial sufficiently to comply with our rules[1] or to require us to consider it at all. See S. J. C. Rule 1:13, 351 Mass. 738. See also *Lolos* v. *Berlin*, 338 Mass. 10, 13–14; *Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427, 430; *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 568, cert. den. 382 U. S. 983. Nevertheless, we have examined the transcript and exhibits. The evidence warranted the jury in concluding that, in a number of instances, the defendant engaged in the following course of conduct as a scheme, viz. (a) he secured the Blue Shield numbers of certain patients for whom he had done dental work not covered by Blue Shield; (b) he then signed and submitted claims indicating that his work included treatment (not given by him) covered by Blue Shield; (c) as a consequence, he received Blue Shield payments improperly; and (d) to conceal his actions, he placed on the claim, as the patient's address, his own post office box number or the address of his brother, so that the patient would not learn of the unjustified claim. There were claims (in excess of $100 in the aggregate) as to which the jury could infer that the type of work for which claim was made had not been done. From the number and contents of the claims, the jury could infer that there was a pattern of theft.

---

[1] Neither counsel for the defendant nor the prosecutor, in their respective briefs on this exception, has made proper "reference to the appropriate page number" of the 378 page transcript of testimony, when referring to the record or stating "a fact in the case." There has been, with respect to this exception, almost complete failure to comply with S. J. C. Rule 1:15 (2), 351 Mass. 739. See *Marshall* v. *Crane*, 339 Mass. 780.

2. There was no error in the refusal to dismiss the indictment on the ground that the defendant had been denied a speedy trial. The defendant was arraigned on July 22, 1966, and committed to a State hospital for thirty days' observation. Various pre-trial motions by the defendant were dealt with in February, 1967. On March 20, 1967, a motion by the defendant for a continuance was allowed. At the June, 1967, sitting in Northampton, the defendant's original attorney withdrew his appearance. His present counsel then first appeared. The defendant filed a motion for a change in the place of trial. This he waived four days later. The case, near the end of that sitting, was continued until the October, 1967, sitting in Northampton "because," as the judge then presiding pointed out, "we don't have sufficient time" in view of the district attorney's prediction that the case would "take at least a week." The defendant agreed to the continuance.

On October 31 and November 1, 1967, the case was considered by another Superior Court judge. A new motion for a change of place of trial was denied on November 2. On the judge's own motion, the case was then continued to February, 1968, because of previous assignments for the few remaining days of the sitting in October and November, 1967.

On February 28, 1968, yet another judge (who presided at the trial) denied the defendant's motion to dismiss (filed February 26) on the ground of failure to give a speedy trial. The case was tried for five court days from February 28 to March 4, 1968.[2]

No formal motion for a speedy trial appears on the docket. The defendant himself was responsible for the continuance to June, 1967. Thereafter the delays caused by the events already mentioned appear to have been essentially unavoidable. The first occasion when counsel for the defendant appears to have objected to further delay was on Novem-

[2] The defendant was confined under sentences on unrelated offences at the time of the hearings in June and November, 1967. The transcript does not clearly show when he would have become eligible for parole on those sentences.

ber 2, 1967, when an exception was saved to the continuance, ordered on that day, late in the October-November sitting,[3] to the February sitting, 1968.

We have recently considered the matter of the right to speedy trial. *Commonwealth* v. *Marsh*, 354 Mass. 713, 714–717, and cases cited. The delay in trial after November 2, 1967, and the circumstances of that delay were insufficient to require the dismissal of the indictment because of failure to bring the defendant to trial earlier. Although the district attorney's office appropriately might have placed this 1966 indictment earlier on the trial list for October-November, 1967, the defendant's desire for a speedy trial should have been brought formally to the attention of the court and of the district attorney in the summer of 1967, or very early in October, 1967, if trial during the autumn sitting was to be ensured.

3. The second motion for a change of place of trial was founded on extensive publicity given by a Northampton newspaper in November, 1966, to the defendant's trial and conviction on charges of larceny not related to the present case. A "change as to the place of trial by jury" is to be ordered with "great caution and only after a solid foundation of fact has been first established." *Crocker* v. *Superior Court*, 208 Mass. 162, 180. See *Commonwealth* v. *Bonomi*, 335 Mass. 327, 333. See also *Commonwealth* v. *Giles*, 353 Mass. 1, 20–21. There was no such showing made as would require the judge deciding the motion to conclude, as matter of law, that an impartial trial could not be had in Hampshire County.

4. The defendant saved an exception to the action of an assistant district attorney (who was not examining the witness) in pointing out during trial something in connection with a document to a witness while on the stand. The transcript does not make clear just what took place. The trial judge apparently regarded the occurrence as insignifi-

---

[3] Sittings for criminal business at Northampton are not continuous but intermittent, and are held at dates established by the Chief Justice of the Superior Court. See G. L. c. 212, §§ 14 (as amended through St. 1932, c. 144, § 1), 14A, 21.

cant. Even if we were to assume the action to have been improper, the record gives no indication that it was prejudicial.

5. The defendant, during cross-examination of a Blue Shield employee, offered in evidence certain notices (not marked for identification) sent to the defendant by Blue Shield. Nothing in the transcript enables us to determine their contents or relevance or whether this exclusion was proper.

6. A Northampton city directory was offered during re-direct examination of the same witness. On a number of claims made by the defendant to Blue Shield, the addresses of the purported patients had been given as 9 Cross Path Road and 101 Riverbank Road. On direct examination the witness had testified that, on an investigation of these streets, he had been unable to find these numbers. The defendant's attorney, on cross-examination, inquired whether the witness had checked the city directory. The witness testified that he had made such a check. The judge, since the subject matter had been raised by questions on cross-examination, could allow confirmation that the directory contained no such numbers. See *Lilien* v. *Bibby,* 341 Mass. 148, 152. See also *Commonwealth* v. *Fatalo,* 345 Mass. 85, 86–87.

7. Two claims made by the defendant upon which no payments had been made were properly admitted as tending to show a pattern or scheme of theft.

8. No prejudice was shown in the action, on the morning for which the witnesses respectively had been summoned, of a State police lieutenant in going over with various witnesses statements previously given by them or in furnishing to certain witnesses a copy of an article by an attorney giving advice on conduct in court.

9. Other assignments of error do not merit comment.

*Judgment affirmed.*