Charles **BROWN**, Petitioner,

v.

Joseph **STREETER**, Respondent.

Civ. A. No. 84-0255-C.

United States District Court,
D. Massachusetts.

Dec. 31, 1986.

Charles Brown, pro se.

Albert F. Cullen, Jr., Cullen and Wall, Boston, Mass., Robert V. Carr, for petitioner.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., for respondent.

CAFFREY, Senior District Judge.

This matter comes before the Court on a petition for habeas corpus relief submitted by Charles Brown, who is currently serving a life sentence for murder in the first degree. After a jury trial, petitioner was found guilty and sentenced on May 17, 1976. The conviction was affirmed on direct appeal to the Supreme Judicial Court. *Commonwealth v. Brown*, 376 Mass. 156, 380 N.E.2d 113 (1978). Petitioner's motion for a new trial in the Superior Court was denied in December, 1981, and his request for leave to appeal that ruling pursuant to Mass.Gen.Laws ch. 278, § 33E, was denied. Order, Abrams, J., June 8, 1983, No. 83–180. The facts of this case are well summarized by the court in *Brown*, 376 Mass. at 157–61, 380 N.E.2d 113.

Petitioner seeks relief from this Court on three grounds. First, petitioner contends that his Fourteenth Amendment due process rights were violated when the trial court failed to exclude testimony of a pretrial photographic identification even though the prosecution failed to introduce the entire photographic array. Petitioner argues that the trial court should have excluded this evidence on the grounds that it was presumptively suggestive. Petitioner's second asserted ground for habeas relief concerns the failure of the trial court to give an instruction to the jury on the evaluation of eyewitness testimony. Finally, petitioner asserts that he was deprived of a fair trial because the prosecutor asked two questions concerning his alleged heroin habit. Petitioner has exhausted his available state remedies, therefore the petition is properly before this Court pursuant to 28 U.S.C. § 2254. After consideration of the arguments presented by both sides and for the following reasons, I rule that the petition for a writ of habeas corpus should be denied.

## I. *Exhaustion of Available State Remedies*

Petitioner first asserts that he is entitled to habeas corpus relief on the grounds that the trial court erred when it allowed into evidence the testimony of John Kenny's pretrial identification of petitioner. Petitioner argues that, since the Commonwealth did not introduce into evidence the two thick black books containing the entire photographic array from which petitioner was identified, the testimony regarding the identification should have been excluded. According to the petitioner, the jury was deprived of the opportunity to assess whether the array was suggestive and thus weigh the probity of Kenny's identification. Absent that opportunity, the petitioner asserts that the court should have presumed the photo array to be impermissibly suggestive, and therefore excluded the evidence. Instead, the testimony was allowed and petitioner thus argues that his Fourteenth Amendment right to due process was violated.

The Attorney General relies primarily on *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) and *Lacy v. Gabriel*, 732 F.2d 7 (1st Cir.1984), *cert. denied*, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984), to maintain that petitioner's constitutional challenge to the admission of the identification evidence was not presented to the state courts and therefore that petitioner has not exhausted available state remedies as required by the federal habeas corpus statute, 28 U.S.C. § 2254(b) and (c). The Attorney General argues that petitioner submits a new legal theory to this Court. According to the Attorney General, the petitioner's objection at trial, and on appeal in the state courts, was based on the contention that the jury could not assess the probity of Kenny's identification, whereas in this Court, petitioner's objection is based on the presumed suggestiveness of the Police Department's identification procedure. The Attorney General thus argues that petitioner neglected to present a constitutional argu-

ment in the state courts and therefore should not be permitted to make such an argument for the first time in federal court.

Petitioner maintains that his objection to the admission of the identification evidence in the state courts was, in substance, the same as the one presented here: that in the absence of the jury's opportunity to ascertain the suggestiveness of the identification procedures, the evidence should have been excluded. Petitioner relies on *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971), to argue that his objection in state court fairly presented the substance of a federal constitutional claim even though he did not cite "book and verse on the federal constitution," and thus his state remedies were exhausted.

The question of whether petitioner has exhausted his state remedies turns on whether he fairly presented to the state courts the substance of the federal constitutional claim. *Lacy,* 732 F.2d at 10. A petitioner may not present new factual claims or legal theories to the federal court. *Turner v. Fair*, 617 F.2d 7, 11 (1st Cir.1980). While petitioner's claim in the state courts need not be presented in precisely the same fashion in the federal court, *Lacy*, 732 F.2d at 10, the state courts should have been alerted to the presence of a federal claim in order to satisfy the exhaustion requirement. *Dougan v. Ponte*, 727 F.2d 199, 201 (1st Cir.1984), *citing Daye v. Attorney General of the State of New York*, 696 F.2d 186 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Generally, a state court is alerted to the presence of federal claims when the petitioner cites particular provisions of the Constitution or relies on federal precedents to support his legal theory. *Dougan*, 727 F.2d at 201.

■ In this case, petitioner raised at trial the issue of the "fairness" of allowing the jury to hear testimony about the pretrial identification.[1] In his brief on appeal to the Supreme Judicial Court, petitioner challenged the validity of the identification evi-

---

1. At trial, petitioner's counsel argued that the identification evidence should be excluded un-

less the photo array was simultaneously introduced because

dence by citing two decisions of the United States Supreme Court, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Petitioner admits to this Court that he did not argue in the state courts that the Police Department procedures were suggestive. Instead, petitioner maintains that the substance of his objection in the state courts—that the potential suggestiveness of the photo array could not be ascertained by the jury—is essentially the same objection as that presented to this Court. I agree.

The Supreme Judicial Court, in its opinion in *Brown*, 376 Mass. at 163, 380 N.E.2d 113, reaffirmed its ruling in *Commonwealth v. Gibson*, 357 Mass. 45, 255 N.E.2d 742 (1970), *cert. denied*, 400 U.S. 837, 91 S.Ct. 75, 27 L.Ed.2d 70 (1970), that the Commonwealth is not required to produce the photo array before introducing evidence of an out of court identification. The issue in *Gibson* also involved a defendant's objection to the introduction of a pretrial photographic identification without the simultaneous introduction of the entire photo array. Defendant's counsel in *Gibson* argued that, absent the photo array, it was not possible to test the "critical identifications" under *Wade*, 388 U.S. 218, 87 S.Ct. 1926, and *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The court in *Gibson* rejected this argument and held that "to require segregation of all the photographs shown to witnesses in the investigatory stage of all crimes would be to place a heavy if not intolerable burden upon investigatory processes at a time when these processes are already overtaxed, and we are not disposed to do it." *Gibson*, 357 Mass. at 47, 255

... the jury has no way of assessing how much weight they are going to attach to the fact that this man picked out—for instance, if all the pictures were of white men, and this was the only black man, I don't know how we are going to be able to reproduce what those pictures were. I object to any reference to a large amount of pictures without the actual pictures being here so that examination can be made with respect to the fairness and so forth.

N.E.2d 742. Although it is preferable to preserve the photographic array, *Sales v. Harris*, 675 F.2d 532 (2d Cir.1982), *cert. denied*, 459 U.S. 876, 103 S.Ct. 170, 74 L.Ed.2d 140 (1982), there are other methods for a court to make the initial determination of whether a photographic identification procedure is impermissibly suggestive. *Id.* at 537–38. The Supreme Judicial Court ruled that it is sufficient to present to the jury the "complete story of the photographic identifications for such weight as they [choose] to give it." *Gibson*, 357 Mass. at 47, 255 N.E.2d 742. Federal precedent is not to the contrary. *Simmons*, 390 U.S. at 388–89, 88 S.Ct. at 973–74.

The court in *Brown* cited *Gibson* which is evidence of their alertness to the federal constitutional issue. I rule therefore that the Supreme Judicial Court addressed and rejected petitioner's federal claim. Accordingly, petitioner has exhausted his available state remedies as required under 28 U.S.C. § 2254(b) and (c), and the petition is therefore properly before this Court.

## II. *The Identification Evidence*

Weighing the merits of petitioner's objection involves an inquiry into whether evidence of a pretrial photographic identification is presumptively suggestive, and therefore to be excluded, merely because the entire photo array is not introduced into evidence. In this case, John Kenny identified the petitioner's photo from two thick books containing an array of photographs. *Brown*, 376 Mass. at 163, 380 N.E.2d 113. The prosecution did not offer the array into evidence because it is evidently not the policy of the Boston Police Department to preserve the array once an identification is made.[2]

Trial Transcript at 65.

2. Although such a policy is not specifically described in the briefs, the Supreme Judicial Court addressed this issue in *Brown*, 376 Mass. at 162, 380 N.E.2d 113, when the court ruled that it would be too burdensome to require law enforcement agencies to segregate all photographs used during a criminal investigation.

■ Petitioner contends the trial court erred in admitting this evidence and that the error resulted in a denial of due process under the principles set forth by the Court in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In *Manson,* the Court announced a two-pronged test to determine whether admission of an out of court identification amounts to a constitutional error: first, whether the identification is reliable according to the measuring factors set forth in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); and second, whether in light of the totality of circumstances there exists a substantial likelihood of irreparable misidentification. *Manson,* 432 U.S. at 114–17, 97 S.Ct. at 2253–54.

Reliability is the linchpin in determining the admissibility of identification evidence. *Id.* at 114, 97 S.Ct. at 2253. The petitioner argues here that the first prong of the *Manson* test cannot be tested where the photo array is not introduced. Accordingly, the petitioner contends that the court should have presumed it to be impermissibly suggestive and therefore excluded it. In support of this argument, petitioner relies solely on two Fifth Circuit decision, *Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980), and *United States v. Sonderup,* 639 F.2d 294 (5th Cir.1981), *reh'g denied,* 453 U.S. 928, 102 S.Ct. 892, 69 L.Ed.2d 1024 (1981), which adopt a conclusive presumption of suggestiveness whenever the photo array is not introduced into evidence.

■ The Attorney General argues that the evidence was properly admitted since the record casts no doubt on the identification procedures used by the Boston Police Department, and thus there is no reason to presume they were suggestive. I agree. Petitioner did not object at trial to the admission of the evidence on the grounds that the identification procedure was conducted in a suggestive manner; indeed petitioner does not assert such an argument here.[3] The identification was made within days of the crime and after Kenny had ample opportunity to view the petitioner from close range. Applying the *Biggers* factors to test the reliability of such an identification, 409 U.S. at 199–200, 93 S.Ct. at 382, I conclude that the identification was reliable and therefore admissable.

■ Moreover, a conclusive presumption need not be adopted to assure due process because the danger of misidentification, even where there was a suggestive photographic identification procedure, is lessened by "a course of cross examination at trial which exposes to the jury the method's potential for error." *Sales v. Harris,* 675 F.2d 532 (2nd Cir.1982). In *Watkins v. Sowders,* 449 U.S. 341, 347–48, 101 S.Ct. 654, 658, 66 L.Ed.2d 549 (1981), the Court stressed the importance of the jury's role in weighing identification evidence by ruling that the Fourteenth Amendment does not require a pretrial hearing to determine the admissibility of identification evidence. The Court noted further in *Manson* that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254. Since the record in this case reveals no evidence to cast doubt on the identification procedure, *cf. United States v. Drougas,* 748 F.2d 8, 27 (1st Cir.1984), and *Branch,* 631 F.2d at 1234, no inference of unreliability is to be taken. Accordingly, I rule that the evidence was properly admitted and that petitioner is not entitled to habeas corpus relief on the basis of this claim.

### III. *The Contemporaneous Objection Rule*

Petitioner's second asserted ground for relief is based on the trial court's failure to instruct the jury on the possibility that the eyewitness identification was mistaken. Petitioner concedes that he did not register his objection at trial or on direct appeal. His objection was raised for the first time

---

3. Even if the procedure was found to be impermissibly suggestive, the evidence need not be excluded if there was no "substantial likelihood of irreparable misidentification." *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254; *Jarrett v. Headley,* 633 F.Supp. 1403, 1418–20 (S.D.N.Y.1986); and *Dukette v. Perrin,* 564 F.Supp. 1530, 1534 (D.N.H.1983).

in a motion for a new trial, which was denied by the Superior Court. A single justice of the Supreme Judicial Court denied his request for leave to appeal that decision on the grounds that petitioner failed to raise "a new and substantial question which ought to be determined by the full court" as required by M.G.L. c. 278 § 33E.

Ordinarily the state court's "contemporaneous objection rule" bars appellate review where a party fails to register the appropriate objection or exception at trial. *McLaughlin v. Gabriel,* 726 F.2d 7, 8–9 (1st Cir.1984); *Commonwealth v. Fluker,* 377 Mass. 123, 130–31, 385 N.E.2d 256 (1979). When the rule is enforced, consideration of such a claim by a federal court on a habeas petition is similarly barred. *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). But petitioner maintains that under the principles of *Wainwright,* this bar does not apply in cases such as this one where he alleges there is "cause" for, or "prejudice" as a result of, his failure timely to raise an objection. There is no evidence in. this record, however, of either the cause or the prejudice petitioner alleges. To establish "cause" sufficient to forgive a procedural default such as the one recognized here by the single justice,[4] petitioner must assert a claim "so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). Petitioner fails to meet such a standard since at the time of his trial he could have raised the objection on the basis of the court's ruling in *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972), which adopted model jury instructions on the issue of eyewitness identification. Moreover, petitioner fails to establish prejudice spawned by the court's

failure to give the desired instruction. On this issue petitioner makes contradictory assertions: on one hand he claims that the court instructed the jury that it could reject a witness' testimony if it is found to be mistaken,[5] and on the other hand he asserts that the court failed to instruct the jury on the issue of the evaluation of eyewitness testimony, thereby "creating a grave risk that the jury convicted petitioner without considering the possibility that the eyewitness was mistaken."[6] Assuming petitioner's first assertion to be true, it does not follow that petitioner suffered grave prejudice as a result of the court's failure properly to instruct the jury. There is no evidence in this record to show prejudice or to show that the court improperly instructed the jury. *Brown,* 376 Mass. at 167, 380 N.E.2d 113. Accordingly, I rule that petitioner is not entitled to habeas relief on this claim.

## IV. *The Jury Instructions*

Petitioner's final basis for habeas relief concerns his objection to the prosecutor's two questions relating to an alleged heroin habit. Petitioner claims his trial was so tainted by inflammatory prejudice resulting from these questions that he was unconstitutionally deprived of a fair trial. The trial judge excluded the questions relating to his heroin habit and instructed the jury to disregard both the questions and the answers. Petitioner contends this was insufficient to cure their prejudicial effect. Petitioner relies on *Allen v. Snow,* 635 F.2d 12 (1st Cir.1980), to argue that when a prosecutor's inflammatory questioning renders a fair trial impossible, a writ of habeas corpus should issue.

The Attorney General argues that the court's instructions were sufficient to cure any prejudice that resulted from the two questions. The Attorney General also re-

---

4. In her Order denying petitioner leave to appeal the denial of his motion for a new trial, Justice Abrams ruled that petitioner's claim "amounts to a request for a second review under G.L. c. 278 § 33E" to which he was not entitled. Order, Abrams, J., June 8, 1983, No. 83–180.

5. Petitioner's Brief in Support of Petition, at 9, *citing* Jury Instructions, at 13–14.

6. *Id.* at 11.

lies on *Allen,* 635 F.2d at 15, where the court affirmed the District Court's denial of a habeas petition. The District Court ruled that the trial court's instructions were sufficiently curative. *Id.* In *Brown,* the Supreme Judicial Court went further and noted that the questions might have been proper on the grounds that they could have established a motive for the crime, but once the trial court excluded them, "it is normally assumed that the jury followed the judge's instruction [to disregard the question] and there is nothing in the record to suggest otherwise." *Brown,* 376 Mass. at 165, 380 N.E.2d 113 (citations omitted).

■ The record in this case fails to reveal an error of constitutional magnitude, *Allen,* 635 F.2d at 15, and any prejudice resulting from the two questions was properly cured by the trial judge's instructions. I rule therefore that petitioner is not entitled to habeas relief on this claim.

In summary, I find no constitutional basis for any of petitioner's claims for habeas corpus relief under 28 U.S.C. § 2254, and therefore the petition should be denied.

Order accordingly.